## Burkholder's Executor *versus* Plank.

1. Want of consideration is not a defence to a bond.

2. If fraud on the obligor is set up as a defence, the want of consideration or its adequacy is material to the inquiry.

3. Where the obligor with a capable will, without fraud or duress executes and delivers a bond to the obligee, it is a gift of the money mentioned in it and its payment may be enforced.

4. A decedent in his lifetime delivered to his son-in-law a bond, in which it was expressed that it was "for services." Proof that there had been no services rendered by the obligee, or that they had been previously settled for, would not avoid the bond.

5. In an action on the bond after the obligor's death, the defence was that its execution had been procured by fraud. *Held,* that evidence that no services had been rendered, or that they were entirely inadequate for the amount of the bond or had been fully paid, was relevant.

6. The plaintiff gave evidence of the services rendered by him in boarding decedent and attending to him in sickness, and that the decedent had spoken with kindness of himself and family in connection with them: in answer the defendant gave evidence of the incapacity of the obligor, with other evidence bearing on the question of fraud. *Held,* that the defendant might give evidence of declarations of the decedent whilst the services were being rendered, that he was not well treated; that he was not friendly with the plaintiff, although not made in plaintiff's presence, as tending to show that the decedent did not intend to make a gift to the plaintiff.

7. A witness testified that she had seen the execution of the note, and the circumstances attending it; evidence of the declarations of decedent was admissible on the question of her credibility.

8. After evidence has been given on the subject of handwriting, the testimony of experts is admissible in corroboration.

May 24th 1871. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Cumberland county:* No. 80, to May Term 1871.

On the 4th of October 1869, J. B. Plank brought an action of debt against Samuel Diller, executor, &c., of Jacob Burkholder, deceased, on the following note:—

"Carlisle, March 15th 1869.

"$3500.00. Six months after date I promise to pay to the order of J. B. Plank, at the Carlisle Deposit Bank, thirty-five hundred dollars, for services, and with interest, without defalcation for value received.

JACOB BURKHOLDER.	[SEAL.]

19 P. F. SMITH—15

| 69 | 225 |
| 162 | 7 |
| 69 | 225 |
| 176 | 500 |
| 69 | 225 |
| 190 | 342 |
| 69 | 225 |
| 20 SC | 124 |
| 69 | 225 |
| f 211 | 6 471 |
| 69 | 225 |
| 32 SC | 3 650 |
| 69 | 225 |
| f39SC1 | 622 |

[Burkholder *v.* Plank.]

In addition to the count in the declaration on the note, the common counts were added. The pleas were: "*Non assumpsit*" and "*Non est factum.*"

Plank was the son-in-law of Jacob Burkholder, who died on the 7th of April 1869, aged about eighty-four, his last illness having been from about February 1st. The defence was that his signature to the note had been obtained by fraud, Burkholder being ignorant of its contents; the defendant also alleged that the services for which the note purported to have been given were of much less value than the amount of the note, and had been paid for in full up to the 1st of April 1869, independently of the note.

On the trial, February 16th 1871, before Graham, P. J., the plaintiff called Lewis A. Smith, who testified: "Am teller of the Carlisle Deposit Bank; am accustomed to examine handwriting of parties. I knew Jacob Burkholder. As a general thing I attended to his business in bank for him, and am familiar with his handwriting. He kept his account in our bank." The note being shown, witness said: "I believe that to be the signature of Jacob Burkholder. The body of the note resembles the handwriting of J. B. Plank; that is my belief. I believe word 'seal' to be in the same handwriting as the body of the note. I did not see Burkholder write the note."

The plaintiff called Emma Meixel, his daughter, who having testified as to the sickness of the decedent, its loathsomeness, the attention rendered to the decedent by the plaintiff, his wife and family, &c., said: "The first that I heard father say was whether he had made any provision in his will for him; he said not, that he had made his will three years ago, but I will reward you now; I always said I would reward you well for what you done for me. He said, I can't give you the money. He said, I have some money, but I don't know how long I may live, and I may need it yet. He said, I will give you my note. He asked father how much he thought he ought to have, and he said, You know what your children said; they wouldn't take and come here and take our place for a thousand dollars a year; and then father said he would not ask that much, and then grandfather said he always liked persons to make their charge, and if it was too much he would say so, and if not enough he would say so. Father said would $3000 be too much, and he said, No, I'll give you $4000, for you have done more for me than all the rest. Then father said, You may make the note thirty-five hundred with interest; father said, If you are satisfied, and grandfather said, Yes, he was satisfied. Grandfather said he should get a note and fill it up; father told me to get ink and pen; I got it for him and father filled up the note, and then father read it to him and handed it to him; he then went to his bureau and put on his glasses and read it, and then signed his name to it. Grandfather said father must get a stamp and put on it or it would not be good. He then gave the note to father."

[Burkholder *v.* Plank.]

The plaintiff gave evidence by several physicians and others of the condition of the decedent during his sickness, of the character of his diseases; that the attention bestowed on him by the plaintiff and his family was constant and kind; that their services were so spoken of by the decedent, and that he promised to pay them; also, that the decedent had frequently spoken in kind and affectionate terms of the plaintiff, his wife and family; and rested.

The defendant gave in evidence a number of similar leases, each for one year, the last being from the 1st of April 1869 to the 1st of April 1870, by which the decedent leased to the plaintiff a farm, the plaintiff delivering to him one-half the produce raised; he also reserved " the part of the house on said premises he now occupies, to wit: the two east rooms on the first floor, and the south-east rooms on the second floor, and a free and undisturbed passage from one room to the other, as also in the yard; said Plank to furnish boarding, washing and mending for said Burkholder, for which said Burkholder is to pay the said Plank three dollars and twenty-five cents for each and every week." By the leases previously to April 1867, the price of the boarding was fixed at $3 per week.

The defendant gave evidence for the purpose of showing that the plaintiff had been paid for his services; also for the purpose of showing what was the character and value of the services; also, that the eyesight of the decedent was bad; that he could not read, could not recognise his acquaintances by sight, but could by their voice; that the services required were not of so unpleasant a kind nor the condition of the health of the decedent such as the plaintiff alleged; also, that the plaintiff and his family were not so attentive to him as they should have been, but neglected him. There was evidence that the plaintiff was indebted to the decedent; that he and his family were much away from him; that the decedent, by declarations which were known to Plank, expressed dissatisfaction with him; that services were performed by others which Plank and his family should have performed, &c.

The defendant then offered to prove by Catharine Senseman, " that during the year 1866, and part of the time for which the plaintiff has given in evidence the declarations of Burkholder as to the treatment of him by the plaintiff and his family, that Burkholder complained to her that if he were not treated better he would have to board with somebody else, and that the last year Burkholder lived he complained of Plank, and said if he did not do better he would have to leave."

This was objected to by plaintiff, rejected by the court, and a bill of exceptions sealed.

G. D. Craighead testified that he had lived very near the decedent, and was well acquainted with him; that he was with him frequently during his last sickness; that his eyesight was bad, and that he was very feeble; he had seen the decedent write his name;

[Burkholder *v.* Plank.]

that he doubted whether he could have written his name during his sickness, as well as the signature to the note in suit; he did not believe the signature to be the decedent's.

The defendant made the following offer of evidence: " There being evidence given tending to show that the note in suit was not signed by defendant's testator, and also tending to show that the services claimed for by the plaintiff were not given, the defendant now proposes to prove that prior to and about the time the note purports to have been given, Jacob Burkholder said· he was not well disposed toward the plaintiff, that he said he would not attend to his business, was running about all the time, that he would never give him anything; that he was not fit to have anything; also, that the plaintiff and his family did not give him what he wanted, and left him alone: this for the purpose of sustaining the evidence that the note was not signed by the testator, as it would be unlikely that with such feelings he would make the note in suit, and to show that he was not in the state of mind the plaintiff alleges him to have been in."

The offer was refused, and a bill of exceptions sealed.

Joseph Sword testified that the plaintiff in speaking to him of the note in suit said, that he (plaintiff) " told Mr. Burkholder that he thought they would better have a witness to this note, and Mr. Burkholder said he did not wish any person to know anything about it but he and Plank."

Samuel Layman testified: " He (plaintiff) said grandpap gave him a note for $3500, and I asked him then if there was any witness, and he said there was not, nobody by when he gave it."

Charles W. Sheafer testified : " I asked Plank in particular if he had a witness to the note, and he said ·there was nobody by, and the old gentleman wanted no one to know it."

Joseph Baker testified: " I asked Plank whether he had witness to the signature of Burkholder, he said he had not; I told him that would be a trouble in his way. I asked him was anybody present, or in the room at the time; he said there was no person present; he said he wished there had been some person there. I repeated again it would be a trouble in his way, and he said the old man wanted no one in. This conversation occurred repeatedly, I mean at different times."

Joseph Walter testified that plaintiff said " grandpap had given him a note for $3500, and I asked him if there was witness, and he said, there was no witness by, and then I told him he ought to have witness on the note; and he said, then, that grandpap didn't want any witness, he said it would make a dispute among the other heirs. Plank told me Mr. Burkholder had paid him up to the 1st of April 1869."

In rebuttal, the plaintiff called a number of witnesses who were acquainted with the handwriting of the decedent, and who testified that in their judgment the signature to the note was genuine.

[Burkholder *v.* Plank.]

They then called two witnesses, who both testified that they were experts as to handwriting, and offered as follows to each:—
" Look at the signature on this note, and say, as an expert, what is your opinion as to its being simulated or not, or is it or is it not, in your opinion, a natural signature."

The offer was objected to by the defendant, admitted by the court and bills of exception sealed.

Both testified that in their judgment the signature was not simulated.

The plaintiff then proved by the teller of the bank in which the decedent kept his account, that forty-four checks shown to the witness were signed by the decedent, and had passed through the bank.

The checks were given in evidence.

He also gave evidence that during his last illness the decedent's mind was clear and his eyesight good.

The plaintiff's 1st point was: If the jury believed that decedent promised the plaintiff that he would reward him if he would take care of him in his old age, " and this reward was not intended by Mr. Burkholder to be included in his ordinary agreements and transactions with Plank, but to be held in parol, and in suspense, as an inducement for said Plank and his family to take proper care of him, the plaintiff is entitled to recover for such services (beyond ordinary boarding and care) on the money counts, unless these services were included in the note given. If the note was given by Mr. Burkholder to Mr. Plank for such services, knowing what he was doing, and as a compensation for any kindness or service received, either in the nature of a gift, reward or payment, no one else has any right to dispute the adequacy of the services, if Mr. Burkholder chose to consider them adequate."

The court answered: " We answer this in the affirmative, except that we say to you that if this note was given as a gift by Burkholder to Plank, then Plank cannot recover on this note, nor recover on the money-counts more than the value of the services rendered. But if Burkholder considered himself indebted to his son-in-law for services, kindness and attention to the amount of the note, and gave it in consideration of the debt he considered due from him to Plank, then the plaintiff may recover the amount of the note."

The defendant's 2d point was: " Under the conflicting evidence in this case, it is for the jury to determine whether the seal was on this note at the time it was executed. If it is not the seal of Burkholder the plaintiff cannot recover; but if they believe that it is his seal, and that the note was signed by him, then, since the note expressly states that it was given for services rendered by Plank to Burkholder, if the jury are satisfied from the evidence

[Burkholder *v.* Plank.]

that no such services were rendered by Plank to Burkholder, but on the contrary that all his services were paid for by Burkholder, up until April 1st 1869, independently of and outside of the said note, plaintiff cannot recover."

The court answered: "It is for the jury to determine whether the seal was on the note at the time it was executed. If it was not, but was added afterwards, it would avoid the note, and there would be no recovery upon it. But I can remember no evidence in the case that would justify the inference that the seal was added after the note was executed; on the contrary, the evidence is that the word '*seal*' is in the same handwriting as the filling up in the body of the note, and I cannot discover any difference in the color of the ink or characters of the handwriting, but this is a question for the jury. In answer to the latter part of this point we say, if no services were rendered when the note was given but what had been paid for at that time, then the plaintiff cannot recover."

His 4th point was: "Under no circumstances should the verdict of the jury in this case exceed their estimate of the value of the services rendered by Plank to Burkholder and remaining unpaid when the note in suit purports to have been given."

The court answered: "We cannot answer this point as requested. If Burkholder promised his son-in-law and daughter that they should be well paid for their services in caring for and attending to his wants and comfort; and upon his last sickness estimated those services at $3500, and gave his note to Plank for that sum, which was his (Burkholder's) estimate of the value of the services rendered, and the note was executed with a full knowledge and consciousness of what he was doing, under these circumstances the plaintiff may recover the amount of the note, although it may be for more than the jury would estimate the services worth."

His 5th point was: "If the jury believe that Burkholder settled with Plank from time to time, as the written agreements between them would indicate, and that he paid him from time to time up to April 1st 1869, as testified by Sarah Wunderich, &c., or if they believe that no value in services has been shown as the consideration of the note in suit, their verdict should be for the defendant, whether they believe the signature to the note to be genuine or otherwise."

The court answered: "The evidence, we think, satisfactorily shows that the boarding, as stipulated in the written leases of the farm, was paid up to April 1st 1869, and we do not understand that this boarding is now claimed. And if there was no other indebtedness than this at the time the note was given, which was afterwards paid, there would be no consideration for the note. If the evidence satisfies you there was no consideration for the note, there can be no recovery upon it. But if Burkholder considered

[Burkholder v. Plank.]

himself indebted to Plank for services, care and attention to his comforts when sick and unable to attend to himself, for which he promised to pay, and considered that the services were worth, under the circumstances, the amount of the note, and did give the note for the services thus rendered according to his own estimate of their value, then plaintiff may recover upon the note, if he signed it with a knowledge of its import and effect."

The court, after referring to most of the testimony, charged: * * * [" In addition to this you have the evidence of Mrs. Meixel, the daughter of plaintiff, who says that she was present in the room when the note was signed, and details the conversation that occurred at that time. Her evidence, the defendant's counsel contend, is not reliable, and ought not to be credited, because it is in conflict with the declarations of her father to Mr. Baker and Mr. Lehman. Mr. Lehman states that in a conversation with Mr. Plank about the note, he asked him if there was any witness, and Plank said there was not, nobody when he, Burkholder, gave it. Mr. Baker states that he asked Plank whether he had a witness to the signature of Burkholder. He said he had not. Witness told him that would be a trouble in his way, and asked him was anybody present or in the room at the time, and Plank said there was no person present. Said he wished there had been some person. Witness repeated it would be a trouble in his way, and Plank replied, the old man wanted no one in. This is certainly in conflict with the evidence of Mrs. Meixel, who said she was in the room when the note was signed, and detailed the conversation between her father and Mr. Burkholder. But plaintiff's counsel contend that this apparent discrepancy is reconcilable without impugning the truth of Mrs. Meixel or her father. That the first inquiry by Mr. Baker was, have you a witness to the signature of Mr. Burkholder? to which Plank replied he had not. That he was next asked, was there anybody present in the room at the time? And the question of inquiry being the proof of the note either by a witness to the note or the presence of a witness at the time it was signed, who could prove its execution, Plank replied there was no person present—meaning there was no person present who would be a witness. The impression being, as plaintiff's counsel allege, with many not conversant with the rules of evidence, that a child cannot be a witness for its parent. This solution of this apparent contradiction between the evidence of Mrs. Meixel and the declarations of her father, is submitted to you, and you will give it such consideration as you may deem it entitled to.]

" You will then inquire and determine from the evidence whether Jacob Burkholder signed the note in suit. You will have a number of signatures, admitted to be genuine, out with you, and in addition to the evidence on the subject you can compare the

[Burkholder *v.* Plank.]

signatures which are genuine with the signature to the note in suit, to aid you in determining whether it is genuine or not. If the evidence satisfies you that the signature is genuine and that Jacob Burkholder signed the note knowing its import and effect and that it was for services rendered in nursing and attending to him the last years of his life, the plaintiff would be entitled to recover the amount of the note and interest. [And although you may consider $3500 a large sum for the services rendered, if decedent intended to repay these services with that sum, and gave his son-in-law, Mr. Plank, a note for that amount as a remuneration for the kindness, attention and unpleasant duties it appears from the evidence Mr. and Mrs. Plank were occasionally required to perform, he had a right to contract and agree for the payment of such sum as he considered right and proper, and to give his note to Mr. Plank as evidence of the debt.]

" But should the evidence not satisfy you that the signature to the note is genuine, then there are moneyed counts in the declaration on which the plaintiff claims to recover compensation for his services, over and above his boarding provided for in the several leases. If the signature to the note is not genuine, then you may allow a fair and proper compensation for attendance, trouble and attention required during the sickness of the deceased, taking into consideration the nature and character of the services required. * * *

" As to the genuineness of the note the burden of proof is on the plaintiff. If it does not satisfy you the note is genuine, the plaintiff cannot recover on the note. But if you are satisfied from the evidence, that the note in suit was signed by Burkholder, then a further inquiry arises. The defendant alleges that although the signature may be genuine, it was procured by fraud, deceit or misrepresentation. If the note was signed by Jacob Burkholder, the legal presumption is that it was fairly and honestly obtained, and the party alleging fraud must prove it. * * * If the evidence satisfies you that fraud or deceit was practised on Burkholder in obtaining the note, there can be no recovery upon it. [On the contrary, if the evidence fails to satisfy you that the note was procured fraudulently, and if you are satisfied that Burkholder signed the note for services which he considered worth the amount he promised to pay, then, as we have before said, the plaintiff may recover the amount of the note and interest.] But should you find that there can be no recovery on the note either for want of proof of its genuineness, or because you believe from the evidence that it was fraudulently obtained, then you may find such sum as you may believe to be a fair and proper compensation for services rendered which have not been paid for."

The verdict was for the plaintiff for $3906.

[Burkholder *v.* Plank.]

The defendant took a writ of error, and assigned errors as follows :—

1, 2. Rejecting the defendant's offers of evidence.

3. Admitting witnesses as experts to testify as to the genuineness of the signature to the note.

4. The answer to the plaintiff's point.

5, 6, 7. The answers to the defendant's points.

8, 9, 10. The parts of the charge in brackets.

*S. Hepburn, Jr., Henderson & Hays,* and *S. Hepburn,* for plaintiff in error.

*W. J. Shearer* and *W. H. Miller,* for defendant in error.

The opinion of the court was delivered, October 9th 1871, by

SHARSWOOD, J.—In an action upon a bond or note under seal, want of consideration is no defence : Sherk *v.* Endress, 3 W. & S. 255 ; Yard *v.* Patton, 1 Harris 278. The late Chief Justice Lewis very clearly draws the distinction between want and failure of consideration in Candor & Henderson's Appeal, 3 Casey 119. If fraud or imposition on the obligor or maker is set up as a defence, then not merely whether there was any consideration, but its adequacy, may be very material as an element in that question. If Jacob Burkholder in the exercise of a capable will—freely and without fraud or duress—sealed and delivered to Jacob B. Plank, the instrument of writing sued upon, it was a gift of the money mentioned in it, and may be enforced against him or his estate after his death.

It appears to have been supposed, that because the note was expressed to be for services, that proof that there were no services rendered by the payee which had not been fully paid and settled, would avoid it. "If," said the learned judge in answer to the second point of the defendants, "no services were rendered when the note was given but what had been paid for at that time, then the plaintiff cannot recover." This was an instruction which was asked by the defendants, and they have no right to complain of it. We think it was an error, which ran through the whole case, which was tried in all respects, so far as this question is concerned, as if it had been on a parol promise. The fact, if the fact was, that no services had been rendered which had not been fully paid for by Burkholder, had a very important bearing upon the questions whether Burkholder had executed the note, and whether it was with a correct knowledge of its contents. If so, he had a right to give it for services however insignificant—even the common office of humanity by the most entire stranger—*monstrare viam erranti.* To show to the jury, in corroboration of the note, that he had no intention to make a gift—that his relations with and expressed opinions in regard to Plank, precluded any such idea—would lead to the inference of fraud if in point of fact there were no services

rendered; or services insignificant compared with the compensation contracted to be paid; or that there had been a settlement in full shortly before the transaction.

The plaintiff had given evidence of the services rendered, not as a claim in addition to and independent of the note, but, in case it should not be sustained, to lay ground for a recovery under the common counts of the declaration. He also showed declarations of kind and grateful feelings of Burkholder towards Plank and his wife. The defendants proved that the entire body of the note was in Plank's handwriting; that Burkholder was very old; had in a great measure lost his eyesight, so as not to be able to read writing; that there was a contract or contracts between the parties by which Plank undertook to furnish boarding, washing and mending for Burkholder, at $3.25 for each and every week; and that there had been a settlement and payment of all that was due on this account. All this was relevant so far as the note was concerned, as tending to sustain the defence of fraud, and only relevant in that aspect. Whether Burkholder intended to give Plank $3500 as a mere gratuity or present, as a grateful return for kind offices performed under no contract expressed or implied to be paid for them, or, besides providing a fair and reasonable compensation, he meant to add a further sum as a present—this certainly was one of the points which fairly arose in the case. The defendants had a right to introduce any competent testimony which bore upon that point. We think the evidence offered by them, the rejection of which is complained of in the first and second assignments of error, did bear upon that point, and ought to have been received. Had the question been under the common counts alone, the ruling of the learned judge would have been correct; for when a case is made out by the admissions of the defendant, it is not competent for him to show other declarations at different times in contradiction of them. But, regarding it as a question of fraud in the plaintiff in obtaining Burkholder's signature to the note in suit, everything which threw light upon the relation between the parties ought to have been admitted and gone to the jury.

Nor can it be said that this rejection did the defendants no injury, although the learned judge instructed the jury in the end that if there was no consideration for the note—no services rendered except those which had been settled and paid for—the plaintiff could not recover. The question of whether Burkholder meant to give $3500 to Plank as a present or gratuity, was not submitted to the jury. Yet the refusal of this offer threw the defendants off their track. The learned judge instructed the jury in answer to a point presented by them—that if Burkholder estimated Plank's services at $3500, and gave his note to Plank for that sum, which was his, Burkholder's, estimate of the value of

`[Burkholder v. Plank.]

the services rendered, and the note was executed with a full knowledge and consciousness of what he was doing, the plaintiff might recover the amount of the note, though more than the jury would estimate the service worth. This was undoubtedly correct. If Burkholder by his bond or sealed note could, as we have seen, give Plank $3500 for nothing, à fortiori he could give him that sum for one day's service. The real question in the cause was as the learned judge properly stated it—Did Burkholder execute the note with a full knowledge and consciousness of what he was doing? To enable the jury to weigh the credibility of the statement testified to by Mrs. Meixel of the circumstances attending the execution of the note, it was quite important that the jury should be able to form a sound opinion as to the true state of Burkholder's feelings towards Plank, and whether he would be likely to make either so large a gift, or so handsome a remuneration for his services. We are of the opinion, therefore, that there was error in the rejection of the evidence complained of in the first and second assignments.

It is unnecessary to examine the remaining assignments. We discover no other error in the rulings and instructions of the learned judge than that which has been noticed. It may be considered as well settled in this state by Fulton v. Hood, 10 Casey 365, and Travis v. Brown, 7 Wright 9, that after direct evidence has been given on the subject of handwriting, the evidence of experts is admissible in corroboration.

Judgment reversed, and *venire facias de novo* awarded.