## Hoffman's Estate.

*Decedents' estates—Promissory note—Parent and child—Evidence.*

The validity of a promissory note under seal given by an aged decedent to his son, two and one-half years before the former's death, will not be defeated by the evidence of three persons that the decedent was infirm and feeble-minded for several years prior to his death, where the witnesses do not state what their opportunity of observation was; how frequently they saw the decedent; and their testimony is contradicted by two witnesses; and it appears that there was nothing in the case to show that the son had any control or undue influence over his father, or managed the latter's affairs, or had any confidential relation with him.

646, (1907).]   Statement of Facts—Opinion of the Court.

Argued Nov. 13, 1906.   Appeal, No. 220, Oct. T., 1905, by Margaret B. Gross, from decree of O. C. Lancaster Co., May T., 1905, No. 39, dismissing exceptions to adjudication in Estate of John Hoffman, deceased.   Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Exceptions to adjudication.   Before SMITH, P. J.

The facts are stated in the opinion of the Superior Court.

*Errors assigned* were in overruling exceptions to adjudication.

*John H. Fry* and *B. F. Davis*, for appellant.—A seal imports consideration, and a contract under seal requires no consideration to support it:  Hosler v. Hursh, 151 Pa. 415; Schmertz v. Shreeve, 62 Pa. 457.

Even as between the parties, the fact that "the son was and is a borrower," would only be admissible on the ground of fraud.   There was no proof of fraud in this case, and fraud cannot be presumed:  Winters v. Mowrer, 163 Pa. 239.

A voluntary conveyance is binding on the party and all claiming under him :  Hartley v. M'Anulty, 4 Yeates, 95 ; Reichart v. Castator, 5 Binney, 109 ;  Candor and Henderson's Appeal, 27 Pa. 119 ; Burkholder v. Plank, 69 Pa. 225 ; Union B. & L. Assn. v. Hull, 135 Pa. 565; Evans v. Dravo, 24 Pa. 62.

*W. H. Keller*, of *Coyle & Keller*, with him *H. B. Lutz*, for appellees.—The burden was on the payee to prove the righteousness of the transaction :  Miskey's App., 107 Pa. 611 ; Darlington's App., 86 Pa. 512 ; Knee v. McDowell, 25 Pa. Superior Ct. 641; Smith v. Loafman, 145 Pa. 628; Stepp v. Frampton, 179 Pa. 284.

The claimant failed to satisfactorily show hostile title to the note.

OPINION BY HENDERSON, J., February 25, 1907 :

This appeal arises on the refusal of the orphans' court to allow the claim of the appellant in a distribution of the estate of the decedent.   The claim was based on a judgment promissory note dated April 1, 1899, for the sum of $850 payable to Jacob

W. Hoffman on April 1, 1900. The note was assigned by the payee to the appellant who now presents it for payment. The execution of the note is not denied. It bears upon its face the declaration of the maker that it was given for value received. It is also under seal, which implies a consideration. The obligation is, therefore, apparently a valid charge against the decedent's estate. The payee of the note was a son of the maker. The latter was about eighty years old at the time of his death and the note was given two and a half years before. Objection was made by heirs of the decedent that the note was without consideration. The payee was not living with his father when the note was given, but for many years had resided several miles away. The maker of the note lived at his own home with his wife and so far as may be discovered from the evidence they looked after their own affairs. There is nothing in the case to show that the son had any control or undue influence over his father, that the son managed or assisted in managing his father's business or that any intimacy or confidence existed except that they bore the relation of father and son. There is no intimation in the evidence that any deceit or imposition or fraud of any kind was practiced by the son when the note was given. The only evidence upon which the conclusion of the court seems to have been based was that relating to the physical and mental weakness of the decedent and the fact that two other notes were given by the father to the son; one of them dated April 2, 1900, for $600 and the other dated April 1, 1902, for $550. The testimony offered to show the mental incapacity of the decedent at the time the note was executed is very meager and unsatisfactory. It is found in the evidence of Martin Yundt, a son-in-law, and Louisa Kerns and Ada Yundt, daughters of the decedent. To the question, " What was his condition the last years of his life? " Yundt answered, " The last couple of years he was feeble-minded. Very feeble. He was affected with dropsy, and sickly." On cross-examination he testified : " Q. What do you mean by weak-minded? A. That is, he was not what he ought to be. Q. Could he carry on a rational conversation? A. He talked all right sometimes, and the next time he hung his head." It will be observed that the witness limited the period of his infirmity to two years before the decedent's death. This time would not extend far enough to

cover the date of the note and could not be held to indicate the condition of mind when the obligation was given. Moreover, it is so clearly insufficient to show that the subject of the inquiry was not competent to enter into a contract at the time the one in question was made that it is not to be taken into consideration in determining the integrity of the appellant's claim. Louisa Kerns testified that the decedent had dropsy for the last three years of his life; that he was just like a child; that he did not know much about anything; that he was not fit for business. Mrs. Yundt's evidence was very brief and to the same effect. The witnesses do not state what their opportunity for observation was; how frequently they saw their father; nor do they give any facts from which we may determine the accuracy of their conclusions. It is to be observed further that they did not make special reference to the condition of their father at or about the time the obligation was given. This evidence is contradicted by Jacob W. Hoffman, who testified that his father was of sound mind; that he had no aberrations or delusions and that he saw him about two days before he died. Jacob M. Fry, another witness, who seems to be disinterested, testified that the decedent was rational up to the day of his death; that he saw him nearly every day during all of the witness' life; that he was an unusually healthy man and that "he knew a dollar's worth up to the day of his death." It would be unsafe in view of this evidence to set aside the solemn obligation of the decedent, which shows upon its face that he received value therefor, upon such general and unsubstantial evidence of mental incapacity. There would be little reliance to be placed on the obligations of persons advanced in years if they might be destroyed by the vague and general evidence presented, and that directly and positively contradicted by two other witnesses, one of them having no apparent interest in the result. Was the note given without consideration? The maker has declared in writing that he received a consideration for it. The evidence relied upon to overcome the presumption arising from the obligation itself is found in the testimony of Louisa Kerns and her daughter, Verna. The former testified that in 1905 Jacob W. Hoffman came to her house and she "questioned him how he come all his money by;" that he told her that "they didn't get the money;" that his father

favored him and indorsed him at the bank. Upon cross-examination she stated that she knew he had given her father some money and that her brother said that the estate owed him $600. Verna Kerns, the daughter, said she was present at part of the conversation referred to by her mother ; that her mother asked Jacob what he did with the money, to which he replied, "Louisa, father favored me and indorsed me in the bank." Nothing in these conversations shows that Jacob Hoffman was talking about the note now presented for payment, and it is contradicted by him. He stated that he told Mrs. Kerns in the conversation referred to that they got the money or he would not have the notes and that he did not say that his father indorsed him at the bank. It appears further from the testimony of Jacob Fry that Jacob Hoffman had advanced money to his father to take up a Burkholder claim, and that the money advanced by the son to his father may have been three or five or six years before the old man died. This is in substance the testimony on the subject of the actual consideration of the note. It falls far short of proof that John Hoffman did not receive any consideration from Jacob when the obligation was given. Moreover, if the note was a voluntary obligation it is good against the party who gave it and also against his heirs and legatees. No creditors are here claiming the fund. The estate is solvent. The obligation is under seal. In the absence of fraud or undue influence it is not material between these contestants whether there was an actual consideration or not. The father had a right to make a gift of the obligation to his son: Candor's Appeal, 27 Pa. 119 ; Burkholder's Executor v. Plank, 69 Pa. 225. The cases cited by the appellees, Miskey's Appeal, 107 Pa. 611 ; Darlington's Appeal, 86 Pa. 512, and others, are cases where undue influence and unfair advantage were clearly established by the evidence. A confidential relation between the parties was proved and many facts pointed directly to the results reached in the adjudication. These authorities do not control the case under consideration. The two notes given by the decedent long after the one owned by the appellant were allowed in the distribution. The learned judge of the orphans' court recognized the inconsistency of this action, but justified it by the reason that the other notes were not objected to, the heirs consenting that they might be paid. Inasmuch, however,

as the evidence offered had no specific reference to the appellant's note and as there was strong evidence to show a consideration for the notes to some extent, at least, the appellant as the holder of the first note is entitled to the benefit of all the evidence tending to show consideration. The court, although holding that the note was prima facie valid and that the burden was on those attacking it to show that it was not a bona fide note for a valuable consideration, concluded that the evidence offered by the appellees was sufficient for that purpose. We cannot agree with him in that conclusion. After a careful examination of the testimony we are of the opinion that the appellees have failed to establish a want of consideration, fraud or undue influence in the execution of the note in question.

The decree is, therefore, reversed and the record remitted to the court below to make distribution to the claim of the appellant as one of the creditors of the decedent's estate.

RICE, P. J., dissenting :

The learned judge below, who had much better opportunity to judge of the credibility of the witnesses who testified before him than we have, found as a fact, upon sufficient evidence in my judgment, that no consideration was given for the note in question. This fact alone would not constitute a defense, as the note was under seal. But I am very strongly inclined to the opinion that this fact, taken in connection with the other facts and circumstances, namely, the extreme age of the maker, his enfeebled condition of mind and body, the relationship of father and son between him and the payee, the confidence growing out of such relation, the withholding, if not the intentional concealment, from his coexecutor by the payee for two years and more of the fact that he held such obligation, brought the case within the general principle enunciated in the cases cited by the appellee's counsel, and cast on the holder the burden of proving that the transaction was fair and conscionable. Upon a full view of all the evidence, without reciting it here, and of the judge's findings of fact based thereon, I am constrained to the conclusion that the decree should be affirmed.

PORTER, J., concurs in foregoing dissent.