# Weber, Appellant, *v.* Roland.

*Judgment—Opening judgment—Petition—Demurrer—Fraud.*

1.  A petition to open a judgment is not demurrable if it alleges failure of consideration, the age, infirmity, and weak-mindedness of the maker, that the maker did not understand the force of it, and that the note was a fraud upon the maker, although the petition does not set forth specific facts showing actual fraud.

2.  An order making absolute a rule to open a judgment will not be reversed, where the opinion of the court below shows such consideration

and balancing of the testimony as to raise in the mind of the judge a clear conviction of the importance, if not necessity, of submitting the disputed question involved to a jury; and this is the case although on a subsequent trial of the cause the judge is convinced that the allegation of fraud is not sustained and withholds the consideration of it from the jury.

*Judgment—Opening judgment—Mental weakness—Issue—Consideration—Seal.*

3. On the trial of an issue to determine the validity of a judgment entered upon a note under seal, where the defense is the mental incapacity of the maker and failure of consideration, evidence of the defendant's lack of memory at the time the note was made, her failure to understand business propositions which were propounded to her and other things of like character and particularly her condition after a stroke, is for the jury.

4. In such a case the burden is cast upon the representative of the defendant, the maker, to show that the decedent was so weak-minded, arising from her bodily infirmities, that she was unable to understand the effect of the signing of the note, upon which the judgment was entered, and it is incumbent upon the defense to show that her lack of understanding depended entirely upon her weak-mindedness.

5. In an action upon a bond or note under seal, want of consideration is no defense.

6. On the trial of an issue to determine the validity of a judgment entered upon a judgment note under seal, where the issue as originally framed involved questions of fraud, undue influence, failure of consideration, and mental incapacity of the maker, and the court and jury eliminate the questions of fraud and undue influence, and the seal eliminates the question as to consideration, the court must confine the consideration of the jury to the question of mental incapacity of the maker arising from her bodily infirmities, and whether her lack of understanding depended entirely upon such mental incapacity.

7. In such a case it is reversible error for the court to use such language that the jury might infer that, notwithstanding the seal, they could find for the defendant, if nothing passed in the way of actual consideration at the time of the execution of the note.

Argued Nov. 13, 1907. Appeal, No. 44, Oct. T., 1907, by plaintiff, from judgment of C. P. Berks Co., Feb. T., 1901, No. 103, on verdict for defendant in case of William F. Weber, for the use of Sallie A. Roland, v. Emma C. Roland, Executrix of Anna E. Roland, deceased. Before Rice, P. J., Porter, Henderson, Morrison, Orlady, Head and Beaver, JJ. Reversed.

Issue to determine the validity of a judgment entered upon a judgment note under seal. Before ENDLICH, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1–4) in overruling demurrer to petition and in granting an issue; (5–11) various instructions, the most important of which are quoted in the opinion of the Superior Court.

*Joseph R. Dickinson,* for appellant.—The petition did not set forth ground for relief: Jenkintown Nat. Bank's App., 124 Pa. 337; Applebee's App., 126 Pa. 385; Luther v. Luther, 216 Pa. 1; Wyman's App., 3 Walker, 410; Nace v. Boyer, 30 Pa. 99; Graham v. Pancoast, 30 Pa. 89; Aiman v. Stout, 42 Pa. 114; Weller's App., 103 Pa. 594; Cosgrove v. Cummings, 195 Pa. 497; Kraus v. Stein, 173 Pa. 221.

Upon the rule to open, the appellee failed to establish mental incapacity, fraud, or undue influence, or any other ground for relief: Dean v. Fuller, 40 Pa. 474; Kraus v. Stein, 173 Pa. 221; Cauffman v. Long, 82 Pa. 72; Eddey's App., 109 Pa. 406; McIntosh v. Condron, 20 Pa. Superior Ct. 118; Aiman v. Stout, 42 Pa. 114; Moorhead v. Scovel, 210 Pa. 446; Worrall's App., 110 Pa. 349; Dickey v. Norris, 216 Pa. 184; Crothers v. Crothers, 149 Pa. 201.

The questions of fact to be tried by the issue awarded were not alleged in the petition to open: English v. Hager, 119 Pa. 541; Miller v. Duvall, 123 Pa. 155; Jenkintown Nat. Bank's App., 124 Pa. 337.

The evidence at the trial was insufficient to submit to a jury; the court misinstructed the jury as to the meaning of the first question of the issue. Judgment n. o. v. for the plaintiff should have been entered: Rife v. Galbreath, 3 P. & W. 204; Nieman v. Ward, 1 W. & S. 68; Miller v. Wise, 33 Pa. Superior Ct. 589.

The court vacated and set aside the judgment, in spite of the undisputed evidence showing conclusively that the maker of the note upon which the judgment was entered, was mentally

competent, fully understood the nature and character of the transaction, and in the absence of evidence of fraud, undue influence, trick, or imposition of any kind having been exerted in the procuring of the note: Rowand v. Finney, 96 Pa. 192; Wilson v. Wilson, 142 Pa. 572; Reno v. Moss, 120 Pa. 49; Dorris v. Coal Co., 215 Pa. 638; Terra Cotta Co.'s App., 124 Pa. 367; Miller v. Piatt, 33 Pa. Superior Ct. 547; Luther v. Luther, 216 Pa. 1; Knarr v. Elgren, 19 W. N. C. 531; Fisher v. Ry. Co., 185 Pa. 602.

*Isaac Hiester,* with him *Spencer B. Roland* and *D. Nicholas Schaeffer,* for appellee.—" Mere mental weakness not amounting to inability to comprehend a contract . . . . furnishes no ground for equitable interference:" Graham v. Pancoast, 30 Pa. 89; Aiman v. Stout, 42 Pa. 114; Moorhead v. Scovel, 210 Pa. 446.

The discretion of the court below in opening the judgment was certainly properly exercised: Jenkintown Nat. Bank's App., 124 Pa. 337; Cloud v. Markle, 186 Pa. 614; Augustine v. Wolf, 215 Pa. 558; McCullough v. Kinnan, 31 Pa. Superior Ct. 557; Tobacco Co. v. Posluszsy, 31 Pa. Superior Ct. 602.

The questions framed by the court were exactly in accordance with the allegations of the petition and the denials of the answer: Jenkintown Nat. Bank's App., 124 Pa. 337.

The evidence on the trial was even more direct, positive, circumstantial and convincing than upon the rule to open the judgment.

OPINION BY BEAVER, J., July 14, 1909:

Upon a bill single under seal, with warrant of attorney to confess judgment, waiving inquisition and exemption laws, a judgment was entered, March 9, 1901, in the court of common pleas of Berks county, in favor of William F. Weber v. Anna Eliza Roland, for $813.75. This judgment was assigned, December 14, 1903, by the plaintiff, to Sallie A. Roland, wife of Fred Roland.

November 21, 1905, a petition was filed by Emma C. Roland, executrix of Anna Eliza Roland, praying the court to open

the said judgment and allow the petitioner to make defense thereto, alleging that at the time the said Anna E. Roland signed and delivered said judgment note she was old, infirm and weak-minded and did not understand the import of the judgment note, nor did she receive any consideration for it, and that the same was a fraud upon her.

The plaintiff demurred to the petition. The demurrer was overruled, depositions were taken on both sides, fairly setting forth the facts of the case, and, upon a hearing, the rule to open was made absolute and an issue was awarded to determine three distinct facts as follows:

"1. Was Anna E. Roland so old, infirm and weak-minded, when she executed the note for $775, dated December 8, 1898, to the order of William F. Weber, on which judgment was entered on March 9, 1901, to No. 103, February Term, 1901, J. D., that she did not understand the import of the transaction?

"2. Did she receive full consideration for said note? and

"3. Did she sign said note, without any fraud or undue influence having been exercised upon her?"

Upon the trial of the issue, the jury rendered a special verdict, answering the first question in the issue "Yes," the second question "No" and the third question "Yes."

In the charge of the trial judge to the jury, as a final summing up, the questions raised by the issue were defined as follows: "You will understand that the first question asks whether Anna E. Roland was so old, infirm and weak-minded as not to have understood the import of the transaction. If you answer that question Yes, then you say that she was infirm and weak-minded to such a degree that she did not understand. If you answer that question No, then you say that she understood what she was doing. You will remember that the second question is, Did she receive full consideration for said note? If you answer that Yes, you will mean that she did get full consideration for it. If No, you say that she got no consideration for it. And the third is, Did she sign the said note without any undue influence? I am not submitting the question of fraud to you at all. If you say Yes to that, you say that the note was not secured by the son in any improper manner. If

you say No, then you mean that it was signed under the pressure of undue influence."

The first four assignments of error relate to the overruling of the plaintiff's demurrer, the opening of the judgment and the awarding of the issue.

As to the demurrer, we think it was properly overruled. The petition alleges distinctly that the note, upon which the judgment was entered, was a fraud upon the maker, the plain inference from which is that it was obtained by fraud.

It is true that there are no specific allegations of particular facts showing actual fraud stated in the petition tending to sustain this allegation, but taken in connection with the alleged failure of consideration and the age, infirmity and weakmindedness of the maker of the note, and the further allegation that she did not understand the import of it, it furnished, in our opinion, taken as a whole, sufficient ground for the granting of the rule to show cause.

As to the opening of the judgment, an examination of the opinion of the court making absolute the rule, in which the reasons therefor are fully set forth, shows such consideration and balancing of the testimony as to raise in the mind of the judge a clear conviction of the importance, if not necessity, of submitting the disputed questions involved to a jury, and, therefore, ground for the exercise of the judicial discretion vested in the court. In his opinion, making absolute the rule, Judge ENDLICH said: "What has been said is, of course, not intended to express any opinion as to the ultimate truth of the matters in controversy, but simply to show that there are substantial questions of fact involved, upon which, as the evidence now stands, a finding by a jury in favor of petitioner would be sustainable. Under the principle declared in Jenkintown Nat. Bank's App., 124 Pa. 337, 345, reiterated in Klopfer v. Ekis, 155 Pa. 41, 42, explained in Ellis v. Ambler, 11 Pa. Superior Ct. 406, 412, and applied as recently as Produce Co. v. Thomas, 28 Pa. Superior Ct. 293, the 'prudent course' will be to refer those questions to a jury."

We are not prepared to say that this conclusion was wrong, notwithstanding the fact that, on the trial of the cause, after

seeing and hearing the witnesses, the judge was convinced that the allegation of fraud was not sustained and withheld the consideration of it from the jury.

The first, second, third and fourth specifications of error are not sustained.

Upon the trial of the cause, as already shown, the question of fraud was not submitted to the jury, and they answered the third question in the issue submitted to them. "Did she sign said note without any fraud or undue influence having been exercised upon her?" in the affirmative. We have, therefore, the question of fraud eliminated by the court, and that of undue influence, by the jury.

There remain for consideration, therefore, under the numerous assignments of error, practically two questions: (1) Did the testimony warrant the submission to the jury of the other questions which constituted the issue, as awarded? (2) Were these questions properly submitted for their consideration?

As to the first question we are led to the conclusion that the evidence in the case as to both the questions of mental capacity and consideration for the note was inevitably for the jury. The testimony of numerous witnesses, whilst not satisfactory as that of experts as to mental capacity, was, nevertheless, based upon facts in regard to the physical condition of Mrs. Roland, her lack of memory, her failure to understand business propositions which were propounded to her, and other things of like character, and particularly her condition after what was called "the stroke," and although not overwhelmingly convincing, was, nevertheless, of such a character that it could not be properly withheld from the consideration of the jury and, if convinced as to this feature of the case, the presumption of a consideration which the seal upon the note imported might be overcome and, if no actual consideration were shown, the answer of the jury would be justified.

This brings us to the last question for consideration—Were the questions of mental incapacity and consideration properly submitted to the jury? The appellant's ninth assignment of error relates to a portion of the charge of the court to the jury as follows: "First. Was Anna E. Roland so old, infirm and

weak-minded, etc.? That question, as all others, will have to be decided by you in the light of all the testimony in this case, and it will come down essentially to this that the question is, Did she understand when she signed this paper that she was giving a judgment that could be enforced against her? Did she understand that what she was signing was something that could be enforced against her upon her property? You notice that this note is dated December 8, 1898, and is payable one day after date. The question for you to determine under all the circumstances is, Did she realize that she was signing a judgment that could be entered up against her and enforced against her twenty-four hours from the time when it was signed? And in the second place, Did she understand that she was giving a judgment which would bind the house she lived in, if entered up? There is some testimony in this case which tends to show that what she afterwards said concerning this transaction indicated a purpose on her part to give her son something which would enable him to collect the money that he had spent for his father out of some other property that had belonged to the father and at that time was still standing in the names of some of the members of the family and of which she was drawing the rents. Was it her purpose, do you find from the testimony that it was her purpose, her understanding of this transaction, that she was giving her son some security which he could enforce, when those properties were sold, against the proceeds of those properties? Or do you infer from the testimony that she understood that she was giving a judgment which would be a lien upon and collectible out of the house that she owned? I don't know whether she at the time when she gave this note lived in it or not; none of us know that, I suppose. You remember that this transaction is a little peculiar in this respect, that it seems that on December 8, 1898, she signed a note altogether similar to this in which she promised to pay to her son Fred Roland $775, with interest, and containing a waiver of exemption and condemnation, etc. Then some time after that she signed this second note which was dated the same day, December 8, 1898. The original note was not at the time returned to her apparently—at least

there is no evidence to that effect. On the contrary, the statement of the plaintiff's counsel is that until recently that original note was still in their possession. But from the statements of the witnesses as to what the old lady, Mrs. Roland, said, it might possibly be inferred that she understood—not necessarily that it is a fact that she was told, but that she understood that the original note had been lost and that she was requested to sign another to take the place of it, which was then this note upon which judgment was entered.

"Now, gentlemen, what did she mean when she gave these papers? Did she understand, was she in a condition to understand and did she in point of fact understand that she was giving a judgment upon her own property, the property on Second street, or did she have an idea that she was giving her son some sort of security by means of which he would be able to recover what he had paid on his father's account out of the other properties when they should be sold? Of course, it is true that she had joined with her husband some years before in conveying those properties to her sons, if I remember rightly —isn't that right, Mr. Dickinson?

"Mr. Dickinson: Two sons.

"The Court: To her two sons. But it is also a fact that the properties were still standing in the names of those sons and that she was getting the rents from the properties, as I understand the testimony. If you find that she did understand that transaction and that she meant to give a judgment, intended and knew she was giving a judgment, which would bind her own property and which could be collected by process, then you will answer that first question, No. If, on the other hand, you find that by reason of her age, her infirmity and her weak-mindedness, she did not understand that transaction, then you will answer that first question, Yes."

Taking this full extract from the charge, together with other parts of it bearing upon the same subject, it appears to us that the court laid a burden upon the plaintiff rather heavier than was warranted by all the facts in the case. It may have been entirely possible that Mrs. Roland did not understand the full import and possible effects of her act in signing the note in

controversy, but unless that lack of understanding arose by reason of her weak-mindedness resulting from her age and bodily infirmity, it would not, as we understand it, destroy its validity. She might have understood that the note was to be payable out of the property of her husband which had been conveyed to the sons or out of a particular property which she herself owned, but if the plaintiff was not responsible for that belief, we cannot see that the validity of the note would be entirely destroyed.

It appeared, upon the cross-examination of the defendant's witnesses, that decedent, with the knowledge and apparent approbation of her entire family, during the time when, as they testified, she was mentally incapable of transacting or understanding ordinary business affairs, had executed a deed to two of her sons for two separate properties, title to which was in her husband, had assigned her interest as beneficiary in a life insurance policy upon the life of her husband to one son and the daughter who was party to the suit, as executrix, and had made her will, in which the defendant was the principal devisee. It also appeared from the testimony of the defendant's witnesses, that the decedent had, for a time at least, collected the rents from several properties in which she and her children were interested, that she had stated beforehand that Alderman Weber, who is the legal plaintiff, and her son Fred were to come to see her in regard to the execution of the note in suit, and afterwards that they had been there, and that she had executed a paper or note, the object of which was that her son Fred should not lose his money—referring to the money which he had advanced during the embarrassment of her husband which greatly concerned and disquieted the entire family. It also appeared that at several times she spoke of the entering of the note at the courthouse, in order that Fred might get his money. It appeared from the testimony of her son Henry, one of the witnesses for the plaintiff, that he had transacted much business for her, in the way of paying bills, during the time when the witnesses for the defendant testified that she was incapable of doing business, that bills for taxes had been sent to her, that she counted out the money for the payment

thereof with great exactness and directed him where the bills were to be paid, and in every way indicated a grasp of her business affairs and of the manner in which her business should be transacted. This testimony was of such a character that it seems to us, after a confusing trial, such as this was, where the testimony was contradictory and the witnesses evidently more or less biased, its character should have been called to the attention of the jury, so as to enable them to balance and take into account the testimony on both sides.

In Moorehead v. Scovel, 210 Pa. 446, it was held that, "In the absence of a fraud or undue influence, mere weakness of intellect from sickness or old age is no ground for avoiding a deed. Mental capacity to execute a deed does not include the ability to understand the legal effect which lawyers may impart to the words employed. If the nature and effect of the instrument as a conveyance of property is understood, it is sufficient." If there were a sufficient consideration for the note and if the decedent understood the general effect of the transaction in which she took part, and that the note was her own obligation for the payment of a debt which she owed, it does not seem to us that it was essential to the validity of the transaction that she should understand all the various steps which it would be necessary for the plaintiff to take to secure the money which she desired and intended him to have.

The question of the mental capacity of the decedent is the all-important question in the case, for it must govern the question of consideration, if not absolutely at least to a very large extent. The court says in what is assigned for error in the tenth assignment: "The seal attached to this note would, on the face of it, import a consideration passing between the two parties, or rather make it unnecessary to prove the consideration. But there is evidence here which you will have to look at and from which you will determine whether anything passed between these people at all. I don't know that there is any pretense that money was actually passed between them at the time. It seems to be generally conceded that what this note was given for was something which this son had laid out for the benefit of the father. The father at the time was dead.

Whatever indebtedness, by reason of the son's outlay, there was to the son was an indebtedness on the part of the father's estate, so far as we have any information in this case—that is to say, up to $500. There is no evidence of anything beyond that in the case, except the note itself. The indebtedness of the father's estate would not constitute a consideration for the widow's note for that money. In other words, the debt of the father's estate is not a consideration to support a note or a promise to pay given by the widow. Therefore, unless the jury could find something else in this case, there would be no consideration for this note, so far as I can remember any part of the evidence. There is a suggestion here that the note may have been given for natural love and affection. That is not in this case. The question here is, whether there was a full consideration, and the only testimony outside of the seal on the note itself that was given here is the evidence of what the mother herself said about this thing and the fact that the son did spend $500 for the father. So, gentlemen, if you believe the evidence as it stands here, your answer to that question would have to be No."

This is a practical direction to the jury to find for the defendant upon this branch of the case.

As to the consideration. The petition alleges "nor did she receive any consideration for it." The issue was framed so that the question for the jury was, "Did she receive full consideration for said note?" in reference to which the court said, "If you answer that Yes, you will mean that she did get full consideration for it." If No, you say that she got no consideration for it. What is said as to the indebtedness of the father's estate constituting a consideration is, of course, correct. The debt of the estate of a decedent is not a consideration to support a note or a promise to pay given by the widow. In this case, however, as the court correctly says, the seal imports a consideration, and yet in that connection he says, "but there is evidence here which you will have to look at and from which you will determine whether anything passed between these people at all." As held in Burkholder's Executor v. Plank, 69 Pa. 225, "Want of consideration is not a defense to a bond,"

and so in Anderson v. Best, 176 Pa. 498. In Cosgrove v. Cummings, 195 Pa. 497, "A seal imports a consideration and creates a legal obligation: in an action upon a bond or note under seal, want of consideration is no defense." So, if the question of want of consideration were the only question involved here, a verdict might well have been directed for the plaintiff. In McIntosh v. Condron, 20 Pa. Superior Ct. 118, we held that, "In an action upon a promissory note brought more than six years after its maturity, where the plea of the bar of the statute of limitations has been met by proof of an express waiver of the statute in writing and under seal indorsed on the note, and by an express oral promise to pay the note, and there is no evidence of fraud, imposition or undue influence in securing from the payee the waiver and the promise, and there is no evidence of the payee's lack of capacity, except that he was old and was subject to fainting spells, the plaintiff is entitled to explicit instructions that the waiver indorsed on the note, if executed under the circumstances detailed by the witnesses, was sufficient in law to remove the bar of the statute, and to cast on the defendant the burden of proving facts which in law would deprive it of that effect."

The burden was cast upon the defendant here, therefore, to show that the decedent was so weak-minded, arising from her bodily infirmities, that she was unable to understand the effect of the signing of the note upon which the judgment was entered, and it is incumbent upon the defendant to show that her lack of understanding depended entirely upon her weak-mindedness. This question, it is true, was left to the jury, but we are not satisfied that the jury might not consider from what was said by the court that, if the decedent did not understand the effect of her signature to the note, she was not bound thereby, instead of making it clear that the lack of understanding must depend upon her lack of mental capacity or her weak-mindedness, caused by her physical infirmities. As to this the testimony was extremely contradictory, and in the absence of that of a physician who attended her at the time of the alleged stroke which is said to have affected her mind, is not convincing, for reasons already stated. It is to be remarked

that the defendant, whose testimony was taken upon the rule to show cause, was not called at the trial, and upon objection for that reason both the plaintiff and the husband of the use plaintiff who were present when the note was given were not allowed to testify. We have practically no testimony, therefore, as to what occurred at the time the note was given.

Nor are we satisfied that the jury might not have inferred from the language of the court as to consideration that, notwithstanding the seal, if nothing passed in the way of actual consideration at the time of the execution of the note, they would be bound to find for the defendant on the second branch of the issue.

The eleventh assignment of error relates to the opinion of the court, discharging the rules for new trial and judgment n. o. v. Although this tends to show the view which the trial judge took of the testimony, it does not afford the basis for revision on our part, as it could not, in the nature of things, influence the verdict, and, unless from it we were led to the conclusion that the case should be reversed and judgment entered for the plaintiff n. o. v., it requires no consideration at our hands.

As already said, we cannot fairly reach the conclusion that the case should have been taken from the jury, and hence we are not ready to say that judgment should have been directed for the plaintiff or entered notwithstanding the verdict.

The ninth and tenth assignments of error are sustained to the extent herein indicated; all others are overruled.

Judgment reversed and a new venire awarded.