# Rodgers *versus* Olshoffsky.

|110  147|
|154  539|
|110  147|
|166  378|
|110    147|
|p 24 SC ¹221|

1. The acceptance of a deed and the execution and delivery of a bond for the purchase money, preclude the purchaser from claiming an allowance for a deficiency in the land in a suit brought upon the bond, when there has been no actual bad faith or fraud on the part of the vendor.

2. In such a case, where there is no other evidence of bad faith than a small deficiency in the width of the lot conveyed and the vendor and vendee had equal opportunity of ascertaining this, it was error to submit the question of bad faith to the jury.

3. In an action for the purchase money of land where defendant by conveying to a third party has disabled himself from placing his vendor *in statu quo*, and where there is no warranty of the quantity of land, he cannot, on the ground of a failure of title as to a portion of the property, resist plaintiff's right to recover the total purchase money.

May 12th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

[Rodgers *v.* Olshoffsky.]

ERROR to the court of Common Pleas of McKean county: Of January Term 1885, No. 359.

Feigned issue, wherein David Rodgers was plaintiff and Jacob Olshoffsky was defendant, to determine the validity of a judgment for $888 entered upon a judgment note given by defendant to plaintiff. On motion of defendant, said judgment was opened and an issue was framed by defendant pleading payment.

On the trial, before OLMSTED, P. J., the following facts appeared : On March 5th, 1880, Enos Parsons *et ux.* conveyed to David Rodgers, the plaintiff, by general warranty deed, without covenant as to quantity, a lot on the north side of Main street in the city of Bradford, Pa. The lot was described in the deed as twenty feet in front on said street. On the same day David Rodgers *et ux.* conveyed the same lot to Jacob Olshoffsky by deed containing no covenant as to quantity, and as to covenants and description it was precisely like the deed from Parsons *et ux.* to Rodgers. At the time of the sale by Rodgers to Olshoffsky, a portion of the purchase money was paid in cash, and the bond, upon which the present suit was brought, was given to secure the balance. Subsequently, on November 10th, 1881, defendant conveyed this same lot to M. Rothstein by a deed containing a similar description. It appeared that the lot was only 18⅓ feet wide instead of twenty as described in the above deeds, but there was no evidence that Rodgers had made any specific representation that the lot was twenty feet in width, or that Olshoffsky was induced to purchase the lot on the faith that it was twenty feet wide. Olshoffsky testified that he had been upon the property and examined it before he purchased.

Counsel for plaintiff requested the court to charge :—

1st. " The deed from the plaintiff to the defendant for the lot in question, contains no covenant as to quantity, and the evidence shows that it was fully executed and delivered, and the bond in suit given to secure part of the purchase money, before the commencement of this suit; and the evidence not showing fraud or gross mistake in the transaction the plaintiff is entitled to a verdict for the balance due on the said bond." *Answer.* " We cannot affirm this point as it is put, but submit the question of the deficiency, and of the good or bad faith of the vendor in making the sale." (Twelfth assignment of error).

2d.—" The evidence showing that the defendant disabled himself from placing his vendor, the plaintiff, in *statu quo* by conveying to a third party the land for which the bond in suit was given, the defence set up in this case can not be maintained, and the verdict must be for the plaintiff for the amount of the debt and interest due upon said bond." *Answer.* " We answer

[Rodgers v. Olshoffsky.]

this in the negative as applicable to this case." (Thirteenth assignment of error.)

3d.—" Where a deed is accepted for land and bond given for the purchase money, the presumption of law is that the title is satisfactory and marketable, and to rebut such presumption and defend against the purchase money the defendant must show the title positively bad by showing a superior and indisputable title in another person asserting such title, and there is not sufficient legal testimony in this case to warrant the jury in finding such legal title in another person. Therefore the verdict should be for the plaintiff." *Answer.* " We cannot affirm this point in its full scope, but submit the question of the deficiency of the land to the jury. (Fourteenth assignment of error).

4th.—" Under the evidence in this case and the law applicable thereto, the plaintiff is entitled to a verdict for the amount of debt and interest now due and unpaid on the bond in suit." *Answer.* " We cannot affirm this point, but submit to the jury questions as indicated in the general charge. (Fifteenth assignment of error).

Counsel for defendant requested the court to charge that " If the jury believe from the evidence that there was one and two thirds feet of the land described in the deed from David Rodgers to Jacob Olshoffsky, to which plaintiff had no title, they must deduct from the amount claimed three hundred dollars." *Answer.* " We affirm this point with this qualification, that the jury must not only be satisfied from the evidence that the land was deficient in quantity, but they must also be satisfied that the plaintiff acted in bad faith in making the sale." (Sixteenth assignment of error).

The court charged the jury, substantially, that if the lot was not twenty feet in front as described in the deed and that if, when the purchase was made, there was bad faith on the part of the plaintiff, the defendant was entitled to a reduction of the plaintiff's claim for the amount that the land falls short, at the price it would come to by the foot under the original sale. (Assignments of error, seventh to eleventh inclusive).

Verdict for the plaintiff for $53.01 and judgment thereon. Plaintiff then took this writ, assigning for error, *inter alia*, the answers to the points and the portions of the charge as substantially stated above.

*Thomas A. Morrison (John N. Apple* with him) for plaintiff in error.—There was no sufficient evidence of fraud to submit to the jury. Fraud will not be presumed without satisfactory proof of its existence: Bear's Estate, 10 P. F. S., 430. The deed contained no covenant as to quantity ; in such a case the

vendee cannot defend against his purchase money bond before eviction by one having a better title: Dickinson *v.* Voorhees, 7 W. &. S., 353; Haggerty *v.* Fagan, 2 P. & W., 533; nor can he resist plaintiff's right to recover, on the ground of failure of title to a portion of the property, if he has disabled himself from placing his vendor. *in statu quo*, by conveying the title to a third party. McKeen *v.* Beaupland, 11 Casey, 488.

*A. Leo. Weil (R. B. Stone* with him) for defendant in error :— The question of bad faith was fairly submitted, and the jury found that there was bad faith, and hence the vendee was properly allowed for the deficiency in quantity: Steinhauer *v.* Whitman, 1 S. & R. 438; Christy *v.* Reynolds, 16 S. & R. 258 ; Wacker *v.* Straub, 7 Norris, 32 ; Asay *v.* Lieber, 11 Norris, 377. The case of McKeen *v.* Beaupland, 11 Casey, 438, relied upon by the plaintiff in error, was a peculiar case and was evidently decided upon the gross inequity of permitting the attempted set-off under the circumstances of the case. There is no similarity between the facts of that case and of the present one.

Mr. Justice GREEN delivered the opinion of the court, October 5, 1885.

We fail to discover in this record even a scintilla of evidence showing bad faith on the part of the plaintiff, and therefore it was error to leave that question to the jury. The learned counsel for the defendant says there was abundant evidence of bad faith, and refers us to the verdict as proof of the assertion. But unfortunately for that method of argument the fact of the verdict, where there is no evidence to support it, proves simply the wisdom of the rule which interdicts the submission of the controverted question to their action. Not being referred to any evidence supporting the verdict in this case we have searched the record for it with the utmost care and patience but without success.

The subject of the sale was a lot of ground in the city of Bradford. It is described in the deed from the plaintiff to the defendant in the same manner precisely as in the deed from Parsons to the plaintiff, and when the defendant sold it to Rothstein he again described it and assumed to convey it in the identical language of the previous descriptions. The description in the plaintiff's deed from Parsons as in all the other deeds is by adjoiners and by stating the outside lines thus : " All that certain lot or parcel of land situate lying and being on the north side of Main street, in the city of Bradford, Mc-Kean county and State of Pensylvania, bounded and described as follows : to-wit; commencing at a stake in north line of Main street, the south-west corner of lot of Willis & Smith ;

[Rodgers v. Olshoffsky.]

thence westwardly along north line of Main street twenty (20) feet to a stake; thence northwardly and parallel with Mechanic street ninety-two (92) feet to a stake; thence eastwardly and parallel with Main street forty (40) feet to a stake; thence southwardly and parallel with Exchange street seventeen (17) feet to a stake; thence westwardly and parallel with Main street twenty (20) feet to a stake, and thence southwardly along lot of Willis & Smith the west line and parallel with Mechanic street seventy-five (75) feet to place of beginning, being same land conveyed to said first party by Enos Parsons and wife by deed bearing even date herewith." The property is not described as a lot containing twenty feet in width on Main street and extending northwardly of that width, but as a lot two of the lines of which are twenty feet in length. It is alleged that these lines are, in reality, only eighteen and one third feet long, and that, therefore, the plaintiff may recover from the defendant, his vendee, only so much of the purchase money as will be left after deducting an amount proportionate to the difference in quantity indicated by the difference in the length of these lines. There was no *quantity* of land stated in the description as being contained in the lot. There was no warranty either of the quantity of the land conveyed, or of the correctness of the lines as described. The transaction was entirely closed by the execution, delivery and acceptance of a deed for the property, payment of part of the purchase money and delivery of a bond for the remainder. The purchaser, being examined as a a witness on his own behalf, testified that he went to the property and looked at it before he bought it; that he looked the property over before he bought it; that there was a building on it, that he did not know the size of the building, paid no attention to it, merely bought the lot. He does not say that there was any specific representation made that the lot was twenty feet in width, or that he was induced to buy it upon the faith of its being of that width. He was asked: " *Q.* Was there anything said about the size of the lot or the building when you were there? *A.* He called it twenty feet. *Q.* Did he tell you who he got it from? *A.* Yes, sir. *Q.* Who? *A.* A Mr. Parsons. *Q.* State whether or not Mr. Rothstein made any claim upon you for the deficiency in this land? *A.* No, sir." He was also asked: " *Q.* Did you have any conversation about it? *A.* Nothing more than about the price. *Q.* Did you go and look at it? *A.* Yes, sir. *Q.* Did you measure it? *A.* No, sir. *Q.* How did you ascertain what the size was? *A.* Mr. Rodgers told me twenty feet." The foregoing is absolutely all the testimony the defendant gave in regard to statements concerning the size of the lot, and it proves at the very best nothing more than that the plaintiff said to him what he believed to be

true and had reason to believe true. He had bought the lot from Parsons as being twenty feet wide, his deed so described it. There is nothing to show that he knew that it was only eighteen and one third feet wide  There is absolutely nothing to show that he practiced any fraud or deceit upon the defendant in regard to the width or anything else. The defendant had just as good opportunity as the plaintiff to ascertain the width of the lot. He could have measured it, but he did not see fit to do so; or he could have taken a warranty as to the quantity, but did not. It is impossible to find anything more in the testimony than a mistake which was mutual, with equal opportunities to both to correct it before closing the transaction. That this is not enough to open the contract and let either party in upon the other for redress after deed delivered and bond given for purchase money has been many times decided, and is undoubted law in this state. In Cronister *v.* Cronister, 1 W. & S., 442, we held that, as between a vendor and a vendee of land, the acceptance of a deed and execution and delivery of bonds for the purchase money, closes the question upon the agreement, merges it in the conveyance, and precludes the parties from afterwards claiming either, on the one side, an allowance for a deficiency in the land, or, on the other, payment for a surplus.

In Farmers & Mechanics Bank *v.* Galbraith, 10 Barr, 490, GIBSON, C. J., said: "The execution of a conveyance is the consummation of a purchase, after which the parties have no recourse to each other except for imposition or fraud. Such is the rule established by Bailey *v.* Snyder, 13 S. & R., 160, and several other cases, in which it was ruled that, when a conveyance has been made without a survey, and a bond taken for the purchase money, the contract is definitely closed, except where the actual quantity differs so grossly from the estimate as to be evidence of deceit." In Dickinson *v.* Voorhees, 7 W. & S., 353, on a sale of 3235 acres there was a deficency of 445 acres, yet it was held that, after deed made and bond delivered, the deficiency constituted no defence against the payment of the bond. In Coughenour's Adm'rs *v.* Stauft, 27 P. F. S., 191, we said, AGNEW, C. J.: " Where the contract is executed by deed and bond or other security, taken for the unpaid purchase money, the rule is not to open a contract so far executed to allow for a deficiency of quantity, nor can there be a recovery for an excess. The cases are numerous (citing a number). This rule, as to the closing of the contract by deed, holds even when the contract was for a sale by the acre." Citing several cases.

In the present case, conceding that there was a deficiency of one $\frac{67}{100}$ feet on a line of twenty feet, we cannot regard it as

so gross as to be evidence of deceit, and there is no evidence whatever of any actual fraud or deceit in the case.

But, in addition to the foregoing considerations, it appears that the defendant subsequently sold the property in question to one Rothstein, describing it in the deed in the identical language by which he bought; that he has not only never been evicted from any of the land purchased, but that no demand has ever been made by his vendee for any shortage in the property. In the description he recites that it is the same land sold by Parsons to Rodgers, and by Rodgers to himself, Olshoffsky. Moreover, the consideration named in this deed is $4,200, whereas the consideration, paid by him to Rodgers, was $3,600. It does not appear that he put any improvements on the property, and apparently it seems that he sold to Rothstein precisely what he bought from Rodgers at a profit of $600, and yet claims for a deficiency upon the theory that he sustained damage on account of it. He has deprived himself of the ability to restore the property to Rodgers by selling it to another, and has thus apparently brought himself within the rule stated in McKeen v. Beaupland, 11 Cas., 488, that, "in an action for the purchase money of lands, the defendant cannot resist the plaintiff's right to recover on the ground of a failure of title as to a portion of the property, if he has disabled himself from placing his vendor in *statu quo* by conveying the title to a third party." We do not decide the case upon these later considerations, those first stated being quite sufficient to dispose of it. We think the plaintiff's fourth point should have been affirmed, and the jury directed to return a verdict for the balance due on the bond with interest. All the assignments after the sixth are sustained.

Judgment reversed and a <em>venire de novo</em> awarded.