## Byrne v. Williams.

H. C. Sayers, Jr., for plaintiff;  C. W. Waychoff, for defendant.

SAYERS, P. J., May 14, 1928.—The facts in this case as gleaned from the depositions are very meagre and poorly developed, and the exhibits recited in the depositions were not attached to them or submitted to the court.  No brief was filed on behalf of plaintiff.  From the depositions and such admissions as appear in the pleadings the court finds the following

### Facts.

In 1923 the plaintiff was the owner of a lot in Greensboro Borough, Greene County, Pa., fronting on County Street, which runs through said borough from northwest toward the southeast (apparently about 40 degrees), and bounded in part on the northwest by Second Street, which intersected County Street at right angles.  Seventy-four and one-half feet of the back of the lot in controversy fronted on Second Street.  On Aug. 17, 1923, the plaintiff appears to have conveyed to R. M. Clovis a part of this lot at the southeast corner of the intersection of Second and County Streets, apparently fronting on County Street 24½ feet, and extending northeast along Second Street a distance of 74 feet.  The plaintiff, about Oct. 15, 1923, sold, and on Oct. 18, 1923, by deed, which appears as an exhibit in the petition to open judgment in this case, conveyed to defendant the lot described in said deed.

The description of the lot sold defendant begins at a point on County Street at the Clovis line and 5 feet northwest of the store building on the lot sold to defendant; from thence the line runs to the northeast along the Clovis lot 74 feet;  thence northwest along the Clovis lot 24½ feet to Second Street;  thence in the same direction 74½ feet along Second Street to lot of Eli Boone;  thence southeast along lot of Boone 74½ feet to lot of Dr. A. L. Eddy;  thence by lot of Eddy southwest 148½ feet to County Street;  thence northwest along County Street 50 feet to the beginning.  There was on the lot a store building 24 feet wide, with a story above the storeroom, used in part by a lodge of Independent Americans.  Apparently, there was another small frame building on the lot, of which we have neither location nor description.

The dwelling-house on the Eddy lot fronted on County Street and extended back along the southeast line of the lot conveyed to defendant, and was a brick building of some description.

In order to make the 50-foot front on County Street, the corner of the lot sold by plaintiff to defendant was pointed out as down on the Eddy house, according to various witnesses, from 2 to 9 feet, and this line would cut a strip off the Eddy house along the northwest side.  This strip, to reconcile

the testimony of all the witnesses, would be about 5 feet wide at the front on County Street. Nothing appears as to the width of the strip on the rear of the building, and there are no surveys exhibited to show any measurements or plan.

When the survey was made for the Clovis lot, plaintiff pointed out to Clovis the southwest corner of his whole lot as being down on the Eddy building at County Street 5½ feet. That is the best evidence of the location of this corner by defendant's witness. Dr. Eddy, who is interested, says this corner was 7 feet down on him, and that he had been in possession of his building about twenty-one years. He did not see the surveyor point out the mark which was chiseled on the sidewalk.

According to the surveyor who made a plan of the town for the borough council, quite a little property encroached on the lines of the streets and alleys in the borough, and, as a consequence, in surveying the lot sold by plaintiff to one Clovis, he relocated Second Street and the property-lines south of it intersecting County Street and moved them all south 5 or 6 feet, and, as a result of this relocation, the corner of the lot sold defendant was located by his survey about 5 feet over on the Eddy house. The borough council, of which plaintiff and Dr. Eddy were members, adopted the engineer's plan as a working plan for the borough, and the survey in this case was made to conform to that plan.

That was the working plan or borough survey in effect when plaintiff sold the lot in suit to defendant. Defendant bought the lot on Oct. 15, 1923, and at the same time he bought with the lot the house, storeroom and goods (presumably belonging to defendant) for a lump sum of $9000. On that day plaintiff pointed out to defendant the location of the southeast line of his lot, cutting off from the Eddy lot and through the Eddy building a strip about 5 feet wide. They recognized that Eddy was in possession of this strip, and presumably knew that the relocated borough survey pushed the line down on Eddy.

When the location of the Eddy corner was pointed out to defendant before he got his deed, he stated that he knew where the corner was and he was satisfied; that he was relying on his general warranty deed and expected to get possession when he was ready for it; and he also said, that "if that is where the line went, I knew there would be no trouble with Dr. Eddy;" "I felt satisfied Dr. Eddy and me would get along without any trouble." Later, he said, speaking of Dr. Eddy, "I knew he was in possession of it. I did not know he claimed it."

The lump consideration for the store, stock of goods and lot was $9000, and when the deed was delivered defendant paid plaintiff $4000 in cash and gave him the judgment exemption note under seal for $5000, on which the judgment in this case was entered. Judgment was entered for $5000, Oct. 18, 1923, in the Common Pleas of Greene County on warrant and confession and defendant paid the entry fee. The note was payable one day after date, with interest, and recites that it is for balance of purchase money. The defendant says the note was for the balance of the $9000 paid in the trade for the house and lot purchased at the time the note was delivered. The fact that the note was for $5000 was discussed between them, and that the consideration in the deed was $4200 or less than the note given, defendant saying: "I told you that the value you had put on the property would look like an entry against the property for more than the deed called for." Defendant stated, also, that he had other property against which the judgment would be a lien. The real estate evidently was sold for $4200, and the store goods were sold for the

balance of $9000, or $4800. The judgment was to secure the balance of purchase money on both. The defendant says that $4200 was a very reasonable consideration for the house and lot.

The defendant paid $2000 on the judgment on Feb. 15, 1924, and $300 on Jan. 6, 1925. He says that sometime after he paid the $2000 he got a verbal notice from Dr. Eddy's wife. "She came in one morning and asked me about this; I told her where this line was, and she told me I had better look my title up before I paid the rest of it." There is nothing to indicate when this conversation or notice was with reference to the payment of Jan. 6, 1925, the presumption being that it was before that date.

Nothing was paid thereafter and execution issued on the judgment on Nov. 3, 1926, almost eleven months after the last payment was made, more than a year after defendant had notice his line might be disputed, more than three years after the judgment was entered and defendant went into possession of his property.

On Nov. 29, 1926, defendant petitioned to open the judgment, alleging that there was a failure of consideration by reason of plaintiff not having the quantity of ground in possession, which he described in his deed from 5 to 7 feet wide running back from County Street.

The defendant had notice of the adverse, actual, open and notorious possession of Dr. Eddy when he paid his money and took his deed. The defendant did finally what should have been done, and what he inquired about, when he paid his money, he measured the lot and found there was 5 feet between the Clovis line and the north line of the store building, that the building was 24 feet wide and that from the store buildings to Eddy's house was 14 feet, making the width of the lot 43 feet in the clear or wider, depending on the proper location of the Clovis line. The defendant was not shown the corner on Second Street, and this was the important corner, the shifting of which by the borough survey probably gives rise to this whole controversy and dispute. The presumption is, if the possession of the original owners was on the old lines, defendant would have his fifty feet without disturbing the possession or lines of the Eddy lot.

According to the borough survey or working plan, Eddy should have shifted his line 5 or 7 feet, as the case may be, over on to his neighbor to the south, and then everything would be lovely and nobody harmed.

It is a fair presumption that defendant knew of the proposed or actual relocation of these lines when he bought his property and he was satisfied to take a chance that in this shift he would have no trouble with Dr. Eddy.

The plaintiff denies that the court has equitable power to open the judgment; avers the consideration for the lot was $4200 and that plaintiff never undertook to deliver possession of any part of the Eddy lot, and there was no fraud in the sale or delivery of possession; that the defendant has by his laches deprived himself of his right to have the judgment opened, and has made no offer to restore to the plaintiff the property described in the deed which he received for the consideration of the judgment, and prays that the rule to open should be discharged. There was no evidence of fraud in this transaction and no charge of it on the part of defendant. Both parties knew how the proposed shift in the south line of the lot was affected by the possession of Dr. Eddy and should have known the legal effect of such possession. Both were satisfied with the understanding they had of the matter and all the terms of their negotiations leading up to the sale, so far as they related to the real estate, were merged in the deed and purchase-money note involved in this transaction.

*Law.*

The defense offered in this case is failure of consideration. The seal on the note imports a consideration and creates a legal obligation. The following distinction between want of consideration and failure of consideration as affected by a simple contract or an instrument under seal is made by the Supreme Court in Candor and Henderson's Appeal, 27 Pa. 119: "It is under seal and is found expressly to be a 'voluntary' bond. The seal imports a consideration and created a legal obligation. In a 'voluntary' bond no consideration is contracted for or expected. The absence of one is, therefore, no ground for equitable relief from a contract conceded to be good at law without it. To say that the 'want of consideration' is a defense against a bond is to express, in language not remarkable for precision, nothing more than the familiar principle that where the obligor fails to receive the consideration contracted for, and on the faith of which he entered into the contract, he is not bound to pay his bond. This principle has no application whatever to the case before us, because no consideration was contracted for or expected. A voluntary bond, it is true, must be postponed until creditors are paid; but it is always good against the party himself and against heirs, legatees and others who stand in no higher equity: 2 Williams on Executors, 871; 3 P. Wms. 223; 2 Mylne & K. 769. In this respect a simple contract differs from a specialty. In the one case the party is not bound without a consideration: 5 T. R. 8; in the other, no consideration is necessary if none was contracted for: 17 John. Rep. 301."

The money secured by the judgment in this case, or the balance now due, is part of the $4200 purchase money for the real estate.

"When, in point of fact, a valuable consideration is relied on to support a deed or contract, under seal or otherwise, it may be inquired into by parol, although the result of the admission of such evidence is to show that the consideration set forth in the writing is not the real one (Nichols *v.* Nichols, 133 Pa. 438, 454, 455), so long as nothing is permitted to be proved that is 'directly inconsistent' with the consideration named in the instrument itself (Buckley's Appeal, 48 Pa. 491, 496; Lewis *v.* Brewster, 57 Pa. 410, 414; McGary *v.* McDermott, 207 Pa. 620, 623), or which directly changes the character of the writing or its covenants (Henry *v.* Zurflieh, 203 Pa. 440, 450); and, in cases of sealed instruments, while a plea of want of consideration ordinarily will not be heard (Burkholder *v.* Plank, 69 Pa. 225, 233; Cosgrove *v.* Cummings, 195 Pa. 497, 498; Clymer *v.* Groff, 220 Pa. 580, 583; Owens *v.* Wehrle, 14 Pa. Superior Ct. 536, 538), a failure of consideration may be shown, for this, instead of attempting to change the terms of the contract, gives a reason why it should not be carried out. In Yard *v.* Patton, 13 Pa. 278, 284, we said that the presence of a seal was more than mere 'presumptive evidence' of a consideration, but immediately added that 'where an actual valuable consideration is intended to pass, and furnishes the motive for entering into a contract, a party may defeat it by showing failure of consideration at any time before its final execution.' Meek *v.* Frantz, 171 Pa. 632, 638; Anderson *v.* Best, 176 Pa. 498, 500, and Dohan *v.* Yearicks, 253 Pa. 403, 405, all recognize failure of consideration as a defense to sealed instruments:" Piper *v.* Queeney, 282 Pa. 135, 142.

Nothing is more certain than that a judgment entered on warrant or by confession may be opened, at any time within reason, to permit a defendant to show failure of consideration.

"In reaching his conclusion, the learned judge overlooked the plaintiff's position. The latter had a regular judgment, entered on a regular bond, to

which there was no legal defense. Want of consideration is not a defense to a bond executed and delivered: Burkholder *v.* Plank, 69 Pa. 225; Rishel *v.* Crouse, 162 Pa. 3. Failure of consideration, however, is a ground of defense, because it raises an equity for relief which will be enforced in Pennsylvania even by courts of law:" Anderson *v.* Best, 176 Pa. 498, 500.

"Nothing appears to be better settled in this State, as well as elsewhere, than that to maintain an action upon a covenant of general warranty an actual eviction must be averred and proved. Not, indeed, that the party need wait to be actually turned out of possession by legal process, for he may surrender when the result is plainly inevitable. In one case, it was held that a judgment in ejectment by itself was not sufficient: Paul *v.* Witman, 3 W. & S. 407. All the cases agree that there must be a change of possession: Clarke *v.* McAnulty, 3 S. & R. 364; Stewart *v.* West, 14 Pa. 336; Dobbins *v.* Brown, 12 Pa. 75; Wilson *v.* Cochran, 46 Pa. 229. It is different where an action is brought to recover unpaid purchase money. There the defendant in Pennsylvania has always been allowed to set up as an equitable defense any outstanding better title actually asserted which would amount to a failure of consideration of the contract of purchase, whatever may be the actual covenants in the deed of conveyance. Such a defense was permitted originally because equity was always a part of the law of this State and the defendant could avail himself as a defense of whatever matter would entitle him to relief at the hands of a chancellor. That was the principle on which was decided Steinhauer *v.* Witman, 1 S. & R. 438, and the long train of authorities which have followed in its wake:" Knepper *v.* Kurtz, 58 Pa. 480, 484.

The defendant claims that the contract to convey was broken as soon as it was made, because plaintiff included in his conveyance a strip of ground not in his possession. If possession had been actually delivered, we could discharge this rule, and defendant could sue on the warranty in his deed when he was ousted of possession by a superior title. That is not this case, however. Here we have the actual adverse possession of the strip of land included in the deed pointed out to defendant before his deed was delivered, and, after he declared himself satisfied with the situation, he accepted the deed and gave the note for the purchase money. The situation as to the south property-line was explained to defendant, and he agreed to accept the deed and pay $4200 for the lot in that situation. Why should the judgment be opened to permit defendant to prove a failure of consideration when he understood at the time why possession of a fraction of the lot could not be delivered and was satisfied with that arrangement?

Is he not estopped from asserting failure of consideration under the circumstances, and especially three years after the transaction is closed, and a long time after he knew Eddy was not satisfied or did not agree that his boundary-line should be moved over on him? Defendant agreed to take his chances with Dr. Eddy when he gave his note, and now that the agreement between plaintiff and defendant to deliver and accept a deed for a strip of land of which defendant was visibly and actually out of possession at the time is not satisfactory to defendant, he claims failure of consideration *pro tanto*, asks to open the judgment and recover damages therefor without offering to restore the property to the plaintiff.

"It is unnecessary to cite authorities to prove that failure of title in part of the land sold affords a *pro tanto* defense against payment of purchase money, unless it plainly appears that the purchaser has taken the title at his own risk, for this principle is so manifestly just that it ought to be taken for granted; but, even if it needed the support of authority, it is abundantly

sustained by the adjudications of this court. This rule is entirely consistent with the cases cited by the plaintiff in error to disprove it. Smith v. Evans, 6 Binn. 102; Boar v. McCormick, 1 S. & R. 166, and Dickinson v. Voorhees, 7 W. & S. 353, are not cases of failure of title, but of mistake and misdescription in the number of acres which the tracts, otherwise correctly described, were supposed to contain:" White v. Lowry, 27 Pa. 254, 256.

"The execution of a conveyance is the consummation of a purchase, after which the parties have no recourse to each other except for imposition or fraud. Such is the rule established by Bailey v. Snyder, 13 S. & R. 160, and several other cases, in which it was ruled that when a conveyance has been made without a survey and a bond taken for the purchase money, the contract is definitely closed, except where the actual quantity differs so grossly from the estimate as to be evidence of deceit:" Baker v. Barley, 34 Pa. Superior Ct. 169, 174.

All negotiations merged in the deed and purchase-money note. The defendant knew all about the circumstances relating to the location of the south line and the possession of Dr. Eddy.

"These instruments constituted the final agreement of the parties on the subject and are presumed to supersede any other agreement different therefrom, and are to be considered the obligation by which the parties consented to be bound. Crotzer v. Russell, 9 S. & R. 78; Moser v. Miller, 7 Watts, 156; Gangloff v. Smaltz, 18 Pa. Superior Ct. 460; Krueger v. Nicola, 205 Pa. 38, and many other cases, hold that the deed of conveyance being the last act of the parties overrules all previous agreements between them in any way contradictory thereto. . . . The defendant's own evidence shows that he knew of the existence of the incumbrance and accepted the deed with knowledge of that fact. In order to avoid the effect of the obligation, it was incumbent on the defendant to prove fraud, accident or mistake in its execution, and to do that by clear, precise and indubitable evidence. The only evidence offered tending to vary the terms of the obligation or to relieve the defendant from its literal effect was the plaintiff's testimony, and it falls far short of exhibiting grounds for equitable relief:" Buchanan v. Dawson, 34 Pa. Superior Ct. 400, 404.

In Dickinson v. Voorhees, 7 W. & S. 353, it appears that Voorhees conveyed to Dickinson several tracts of land, describing each tract in the deed as containing so many acres, aggregating 3225 acres, and took his bond for the purchase money. One tract on actual survey fell short 445 acres. It was held that this did not furnish the vendee with a defense against the bond, the Supreme Court saying: "But still, notwithstanding, inasmuch as the parties afterwards carried into execution their contracts respectively, by the vendor, in making a deed of conveyance of the land to the vendee according to the extended quantity, without measuring the same, and the vendee's giving to the vendor his bonds securing the payment of the purchase or balance of the purchase money according to the estimated or reputed quantity, it was held that the parties were bound by such execution of the contract, and that the vendee was thereby precluded afterwards from claiming an abatement of the amount for which he gave his bonds in the first case."

In Rodgers v. Olshoffsky, 110 Pa. 147, there was a dispute arising out of the description of a lot conveyed, where certain lines on the ground were actually shorter than distances or measurements described in the deed. That part of the opinion of the Supreme Court peculiarly applicable to this case is here quoted at length: "The property is not described as a lot containing

twenty feet in width on Main Street and extending northwardly of that width, but as a lot, two of the lines of which are twenty feet in length. It is alleged that these lines are, in reality, only eighteen and one-third feet long, and that, therefore, the plaintiff may recover from the defendant, his vendee, only so much of the purchase money as will be left after deducting an amount proportionate to the difference in quantity indicated by the difference in the length of these lines. There was no quantity of land stated in the description as being contained in the lot. There was no warranty either of the quantity of the land conveyed or of the correctness of the lines as described. The transaction was entirely closed by the execution, delivery and acceptance of a deed for the property, payment of part of the purchase money and delivery of a bond for the remainder. The purchaser, being examined as a witness on his own behalf, testified that he went to the property and looked at it before he bought it; that he looked the property over before he bought it; that there was a building on it; that he did not know the size of the building, paid no attention to it, merely bought the lot. He does not say that there was any specific representation made that the lot was twenty feet in width, or that he was induced to buy it upon the faith of its being of that width. . . . He [vendor] had bought the lot from Parsons as being twenty feet wide; his deed so described it. There is nothing to show that he knew that it was only eighteen and one-third feet wide. There is absolutely nothing to show that he practiced any fraud or deceit upon the defendant in regard to the width or anything else. The defendant had just as good opportunity as the plaintiff to ascertain the width of the lot. He could have measured it, but he did not see fit to do so; or he could have taken a warranty as to the quantity, but did not. It is impossible to find anything more in the testimony than a mistake which was mutual, with equal opportunities to both to correct it before closing the transaction. That this is not enough to open the contract and let either party in upon the other for redress after deed delivered and bond given for purchase money has been many times decided and is undoubted law in this State. In Cronister *v.* Cronister, 1 W. & S. 442, we held that, as between a vendor and a vendee of land, the acceptance of a deed and execution and delivery of bonds for the purchase money closes the question upon the agreement, merges it in the conveyance, and precludes the parties from afterwards claiming either, on the one side, an allowance for a deficiency in the land, or, on the other, payment for a surplus."

We cannot hold in this case that laches alone is sufficient to defeat defendant's claim, but his delay, coupled with the other circumstances in the case, does not add strength to his appeal to the equitable side of this court. There is no apparent excuse for his delay.

There was no evidence of fraud and no charge thereof in this case, and all negotiations and understandings were merged in the deed and purchase-money note. "After a deed has been given and accepted, the purchaser may set up as a defense (to an action by a vendor to recover the purchase money) a breach of an incidental covenant in the contract which is not merged in the deed, but, as a general rule, the contract to convey is merged in the deed, and after acceptance of the deed, the purchaser cannot set up in defense a breach of a covenant or condition in the contract, but must rely on his covenants in the deed and bring an action on them after a breach thereof:" 39 Cyc., 1919. "The contract to convey is generally merged in the conveyance, but there may be incidental covenants that are not so merged:" Colvin *v.* Schell, 1 Grant, 226 (Supreme Court). The defendant here accepted his deed knowing that possession of the strip in controversy was not in plaintiff. Had

there been any special covenant with regard to the possession of the strip, it might have been pleaded as a good defense to the action for the purchase money. The outstanding possession of the strip was apparent to defendant, and was explained to him, and he took the chance of obtaining possession in the future and accepted the deed without condition.

In the case of Horbach *v.* Gray, 8 Watts, 492, 497, involving a controversy somewhat similar in principle to this case, the Supreme Court said: "Had the vendee unconditionally accepted the conveyance, containing, as it did, a covenant of general warranty, he would have elected to rely on it exclusively, and could not have used this known and contingent defect, whether real or supposed, as a pretext to withhold the purchase money." The defendant in this case was relying on his deed; as he says, "I expected to get it any time I was ready for it. When a fellow sells something and gives a warranty deed for it, you expect him to get possession."

The defendant has now just what he saw in possession of plaintiff when he bought the lot and took his deed. The disputed line was pointed out to him, and he was satisfied to take his chances on what Dr. Eddy would do about it in the future. The Superior Court in a recent case has laid down the following principles which may readily be applied to this case: "Where the contract is fully executed and the purchase money paid, the transaction cannot be ripped up without actual proof of fraud or mutual mistake in an essential point. The plaintiff bought the property on inspection, and the deficiency is clearly insufficient, standing alone, to justify submitting the question of fraud or mutual mistake to a jury: Rodgers *v.* Olshoffsky, 110 Pa. 147; Landreth *v.* Howell, 24 Pa. Superior Ct. 210. He received all the property within the boundaries set out in the deed: Large *v.* Penn, 6 S. & R. 488; Keen *v.* Eaby, 254 Pa. 273; Smith *v.* Donahue, 60 Pa. Superior Ct. 424. The words "more or less" in connection with the length of the lot would lead one to conclude that the quantity between the front and rear lines was in the minds of the parties rather than the exact measure of the depth. See Rodgers *v.* Olshoffsky, *supra;* Coughenour's Admin'rs *v.* Stauft, 77 Pa. 191. Looking at the testimony, we find that the appellant deposed that he went on the ground; 'I examined it; I saw there was a gate there, and I saw there was an alley there. There was a right-of-way for an alley; a passage for some one to get in and out at the rear.' The following day he paid for the deed. This shows conclusively that the plaintiff exercised his right of inspecting the property before he bought it, and saw the visible monuments on the ground defining its extent:" Mylin *v.* Hetrick, 82 Pa. Superior Ct. 475, 477.

The defendant's proof is conclusive that there was no fraud or overreaching in this matter on the part of plaintiff. We do not feel, under the facts and circumstances of this case and the law applicable, that we could sustain a verdict for plaintiff in this case if a jury was permitted to pass on the facts: Freeman *v.* Sanner, 11 Pa. Superior Ct. 42; Joy *v.* Amantea, 43 Pa. Superior Ct. 529.

While defendant says in his testimony that "he told me he would give me all the time I wanted to pay the balance," this fact is not advanced as a reason for opening judgment as a matter of defense. Such an agreement, if made, would not furnish a good reason for opening this judgment. There was no averment or proof of fraud, accident or mistake: Security Finance Co. *v.* Reiser et al., 7 D. & C. 634.

And now, May 14, 1928, the rule to open judgment is discharged; costs to be paid by defendant.

From S. M. Williamson, Waynesburg, Pa.